## WESTERN INDUSTRIAL CO. et al. v. DODGE et al.

(Circuit Court of Appeals, Fifth Circuit. May 15, 1900.)

### No. 899.

VENDOR'S LIEN—EXTENSION TO OTHER LANDS—CONTRACT—CONSTRUCTION.

> Plaintiffs sold and conveyed to S., M., and J. 36 tracts of land, reserving in the deeds therefor a vendor's lien to secure the payment of certain promissory notes for part of the purchase price. Thereafter, and before the payment of said notes, M. and J., who had succeeded to the interests of S. therein, conveyed said lands, with numerous other tracts of land, to W., the deed reciting that the conveyance was made "subject to all incumbrances now existing upon any or all of the lands hereby conveyed," and also made another deed of the same lands to the same grantee, wherein the latter assumed "all the incumbrances now existing" upon the lands described. Subsequently plaintiffs entered into a written agreement with W., whereby the latter bound itself for the payment of said purchase-money notes, the time for the payment thereof was extended by plaintiffs, the vendor's lien originally reserved therein was referred to as a continuing lien, and it was provided that W.'s default in the payment of taxes, or of the principal and interest on said rates, should operate to mature all of the notes. *Held* that, under the above-mentioned instruments, plaintiffs were entitled to a first lien upon the 36 tracts of land conveyed by them to S., M., and J., for the satisfaction of said notes, but that they were not entitled to any lien whatever upon the other lands embraced in the deeds from M. and J. to W.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

F. B. Stanley, M. A. Spoonts, George Thompson, and D. T. Bomar, for appellants.

Chas. K. Bell, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The record in this case is voluminous. There are 432 closely-printed octavo pages, which embrace so much of the record as the parties deemed it necessary to print. There are also four briefs, each of which presents in liberal display the learning of the eminent solicitors who appear for the respective parties. It would be tedious and unprofitable to reproduce in this opinion the manifold pleadings, the propositions and counter propositions of fact and law, and the multiplied minute distinctions which, with microscopic keenness and intensity, have been made to obscure, and to almost hide, the few vital and simple facts and principles on which the case hinges.

On February 12, 1890, the complainants sold to G. P. Meade, Wm. F. Sommerville, and J. Grant Jones the 36 tracts of land first described in the complainants' bill, and conveyed the same to the purchasers by 36 separate deeds. In part consideration for the purchase of each tract, the purchasers executed three several promissory notes, maturing at different dates, bearing interest from date, and providing for the payment of 10 per cent. on the principal and interest as attorney's fees if the notes were not paid without suit; and both in the deed and in the notes mention was made that a vendor's lien was retained on the land to secure the payment of the notes given in each case, respectively. Meade, Sommerville, and Jones, though not so named in the deed to them, were in fact trustees for an unincorporated association known and called the "Wichita Colony Company." The members of this unincorporated association, before the 15th of February, 1891, became substantially the only stockholders in the defendant the Western Industrial Company. Before that time Sommerville had released his right and interest as one of the trustees to the other two, Meade and Jones, and on February 15, 1891, these two trustees, on the request of the cestui que trust, conveyed to the defendant the Western Industrial Company, which took title as trustee for the same parties, the 36 tracts of land which had been sold to Sommerville, Meade, and Jones by the complainants, and, along with these 36 tracts of land, very numerous other tracts of land, amounting in the aggregate to more than 150,000 acres. It appears that Meade and Jones executed two deeds to the defendant the Western Industrial Company, bearing the same date, February 15, 1891, and purporting to convey the same land, which is more particularly described in one of the deeds than in the other. In one of these deeds this language appears: "This conveyance is made subject to all incumbrances now existing upon any or all of the lands hereby conveyed." This deed was authenticated for record before D. T. Bomar, a notary public, on March 14, 1891, and ap-

pears to have been filed for record in Wichita county, Tex., on June 25, 1895. In the other deed this language appears: "Know all men by these presents, that we, G. P. Meade and J. Grant Jones, of the county of Tarrant and state of Texas, for and in consideration of the sum of $357,666.66, to us cash in hand paid, and the assumption of all the incumbrances now existing upon the hereinafter described lands by the Western Industrial Company, have this day granted," etc. This deed also was authenticated for record on the 14th of March, 1891, before D. T. Bomar, notary public, and was filed for record in Baylor county on March 23, 1891. The bill avers, and the answer of the Western Industrial Company admits, that on December 9, 1892, and on divers other dates prior and subsequent thereto, the Western Industrial Company, by its agreement in writing signed by its proper officers thereunto duly authorized, acknowledged itself bound for, and promised to pay to the complainants, the indebtedness evidenced by the notes of Meade, Sommerville, and Jones to the complainants. The bill avers, and the answer of the Western Industrial Company admits, that at the special instance and request of that company, and in consideration of $3,201.12 paid on account of the indebtedness evidenced by the notes declared on, the complainants by a contract in writing agreed to and did extend the time of payment of all of the notes, agreeing in detail as to the terms of the extension; and that thereafter the defendant corporation, at different times, paid on the notes divers sums of money, a portion of which was applied to the satisfaction of the interest thereon, and a part to the principal thereof; and that the complainants and the company then made up, settled, and stated an account in writing of all sums of money which the defendant corporation then paid, and which it had before that time paid, on the indebtedness evidenced by the notes in question. On July 1, 1892, Meade and Jones, by their deed in writing, duly authenticated for record on July 7, 1892, and filed for record in the proper office in Baylor county, Tex., on August 8, 1892, had undertaken to release any lien they had, or might be supposed to have, on any of the land conveyed in the two deeds of February 15, 1891; and both before and after July 1, 1892, and before August 14, 1895, the Western Industrial Company had, by various deeds and other instruments in writing, duly executed and recorded, in favor of the various other defendants in this bill, conveyed, incumbered, and dealt with the numerous tracts of land constituting the 150,000 acres or more embraced in the deeds of Meade and Jones of date February 15, 1891. In this condition of affairs, the complainants in this suit and the Western Industrial Company did, on August 14, 1895, enter into this agreement in writing:

"This agreement, made and entered into by and between Melissa P. Dodge, executrix, and William E. Dodge, Jr., and D. Stuart Dodge, executors, of the will of William E. Dodge, late of the state, county, and city of New York, a certified copy of said will, with its probate, from the surrogate's court of the county of New York, state of New York, having heretofore been filed in the office of the county clerk of Lampasas county, Texas, parties of the first part, and the Western Industrial Company, a corporation duly incorporated under the laws of the state of Iowa, and having a permit from the state of Texas authorizing it to transact business in Texas, party of the second part, wit-

nesseth that whereas, the estate of Wm. E. Dodge did heretofore convey **to** the parties named below the following sections of land situated in Baylor county, Texas, to wit:

| No. of Sec. | Price. | Date of Sale. | Name of Purchaser. | | |
|---|---|---|---|---|---|
| | | | G. P. Meade. | W. F. Somerville. | J. G. Jones |
| 57 | $1,300 00 | Feb. 12/90. | " | " | " |
| 59 | 1,300 00 | do. | " | " | " |
| 61 | 1,360 00 | do. | " | " | " |
| 63 | 2,400 00 | do. | " | " | " |
| 65 | 2,300 00 | do. | " | " | " |
| 83 | 1,720 00 | do. | " | " | " |
| 97 | 1,800 00 | do. | " | " | " |
| 103 | 2,200 00 | do. (Part of) | " | " | " |
| 109 | 2,720 00 | do. | " | " | " |
| 111 | 2,520 00 | do. | " | " | " |
| 113 | 2,440 00 | do. | " | " | " |
| 115 | 1,800 00 | do. | " | " | " |
| 117 | 1,720 00 | do. | " | " | " |
| 119 | 2,000 00 | do. | " | " | " |
| 151 | 1,700 00 | do. | " | " | " |
| 161 | 2,600 00 | do. | " | " | " |
| 187 | 2,600 00 | do. | " | " | " |
| 195 | 2,500 00 | do. | " | " | " |
| 197 | 2,320 00 | do. | " | " | " |
| 199 | 2,440 00 | do. | " | " | " |
| 201 | 1,920 00 | do. | " | " | " |
| 203 | 2,440 00 | do. | " | " | " |
| 205 | 2,720 00 | do. | " | " | " |
| 207 | 2,600 00 | do. | " | " | " |
| 209 | 2,200 00 | do. | " | " | " |
| 211 | 2,440 00 | do. | " | " | " |
| 215 | 2,000 00 | do. | " | " | " |
| 217 | 1,920 00 | do. | " | " | " |
| 219 | 1,920 00 | do. | " | " | " |
| 221 | 2,440 00 | do. | " | " | " |
| 223 | 3,000 00 | do. | " | " | " |
| 227 | 2,520 00 | do. | " | " | " |
| 229 | 2,200 00 | do. | " | " | " |
| 231 | 2,200 00 | do. | " | " | " |
| 235 | 1,920 00 | do. | " | " | " |
| 237 | 1,600 00 | do. | " | " | " |
| 239 | 1,700 00 | do. | " | " | " |
| 243 | 2,600 00 | do. | " | " | " |

"And whereas, said purchasers did pay one-fourth of the purchase price **for** each tract upon delivery of deed, and did execute three promissory notes, each for one-fourth of the purchase price, due on February 12, 1891, February 12, 1892, and February 12, 1893, respectively, said notes providing for 6% interest per annum, the interest upon each note being made payable annually **on** February 12th, and each note retaining the vendor's lien; and whereas, the Western Industrial Company has become the purchaser of each of said tracts from the vendees of the estate of Wm. E. Dodge, and as a part consideration therefor did assume the unpaid purchase money due said estate; and whereas, all interest on each of said notes has been paid down to February 12, 1895 (the interest from February 12, 1894, to February 12, 1895, being settled at the rate of 5% and 60%, or (⅗) three-fifths of the principal sum due upon each of said notes, originally maturing in 1891, has been paid, and the party of the second part desires an extension on the remaining unpaid purchase money, which is granted for the considerations, and subject to the conditions, named below, to wit: First, the party of the first part has and does hereby reduce the rate of interest on each of said notes from 6% to 5%, commencing February 12, 1895; second, the party of the second part hereby releases and relinquishes all claims that have heretofore arisen or may hereafter arise or accrue against the estate

of Wm. E. Dodge, growing out of any conflict in the boundary lines of said surveys with other surveys or with each other; third, the party of the second part agrees and binds itself to pay up annually all taxes assessed against said property, and to keep same free from tax sales; fourth, the party of the second part agrees and binds itself to pay to the parties of the first part, at the office of the estate of Wm. E. Dodge, in the city of New York, annually, on February 12th in each year, the annual interest of 5% upon the unpaid principal due upon each of said purchase-money notes, and in addition thereto to pay on February 12, 1896, 20%, or ⅕th, of the original principal sum due upon each of said notes, maturing originally in 1891, and on February 12, 1897, to pay the remainder of said first notes, and on or before February 12, 1900, to pay the said notes which originally matured in 1892 and 1893, together with the interest then unpaid on same; fifth, the parties of the second part reserve the right to pay up in full any one or more of said notes at any time within said extension; sixth, it is especially agreed and understood that the failure on the part of the party of the second part to strictly perform the obligations assumed by it in items third, fourth, and fifth of this agreement shall mature each and all of said notes, at the option of the party of the first part, and the same may thereupon be collected, allowing 5 per cent. interest instead of 6 per cent. In witness whereof said parties have hereunto signed this agreement on this the 14th day of August, A. D. 1895.

　　　　　　　　　　　　　"Estate of Wm. E. Dodge.
　　　　　　　　　　　　　"Melissa P. Dodge, Ex.
　　　　　　　　　　　　　"D. Stuart Dodge, Ex. ·
　　　　　　　　　　　　　"The Western Industrial Co.,
　　　　　　　　　"By Morgan Jones, Vice President."

Learned discourse touching the origin and character of vendors' liens and implied liens in equity, and ingenious refinements as to the distinctions obtaining between these and expressly retained liens in the nature of a mortgage appearing on the face of a deed or purchase-money note, and the laborious array of judicial precedents to indicate and illustrate the construction to be placed on the assumption clauses in the deeds of February 15, 1891, all blush themselves away beyond the vanishing point before the explicit dealings of the parties to the agreement of August 14, 1895, as the same appear on the face of that instrument and in the previous transactions we have recited. It is clear to us that the complainants at the time of entering into the agreement of date August 14, 1895, had not in contemplation, and in good conscience could not then have had in contemplation, and may not now look to or rely upon, a first mortgage lien or any other lien accruing to them upon or against the 150,000 or more acres of land, which they had never owned, embraced in the deeds of Meade and Jones of date February 15, 1891, to which reference has been made, and of which they do not claim to have had any knowledge or notice other than that constructive notice resulting from the recording thereof, precisely similar in kind and extent to the constructive notice with which they were then charged of all the dealings of the defendants in reference to this 150,000 and odd acres of land. It is therefore clear to us that the complainants have for the satisfaction of their debt the first lien on the lands described in the bill as having been sold and conveyed by them on February 12, 1890, which they were careful then to expressly retain, and which they were so careful to protect by the agreement of August 14, 1895. It is equally clear to us that the dealings of the complainants with the Western Industrial Company since February 15, 1891, all along down

to and including the agreement of August 14, 1895, conclusively show that they did not claim, and they should not now be allowed to claim, a first mortgage lien, or any other lien, in advance of judgment, against the other lands described in their bill, and held by the decree in this case to be ultimately subject to the satisfaction of their debt.

The defense attempted to be set up by the Western Industrial Company, joined in by the other defendants, and based upon alleged fraud on the part of the complainants in having paid a commission to J. W. Jennings, is not, if well pleaded, sustained by the proof. This defense having wholly failed, as the circuit court also found, the amount of the indebtedness due to the complainants, as shown in the decree, namely, the sum of $59,740.80, with interest thereon at 5 per cent. per annum from the 11th day of December, 1899, the date of the decree, appears to be admitted by all the parties, or, if not so admitted, to be amply proved. The whole case being now before us, we reverse so much of the decree of the circuit court as adjudges that the complainants have a lien on any of the land described therein other than the 36 tracts of land first therein described; and, as thus reversed and amended, the decree of the circuit court is now here affirmed and rendered as the decree of this court. The costs of this appeal are adjudged against the appellees.